With respect to the rule of the common law upon this subject, there can be no doubt. Every contract entirely and wholly originating after the testator's death, made with his executors, is a contract entirely and wholly originating after the testator's death, made with his executors, is a contract which they do not succeed to, and therefore must sue in jureproprio. 4 Term, 277; 5 Term, 234; L. Ray., 436, 437; Salk, 207;6 Mo., 181; Godol., 155. Where the thing to be recovered by the action will be assets when recovered and not before, the action must be as executor; but if it be assets already, and whether he recover or not, he need not sue as executor. 6 Mo., 94. Now all the effects of a testator actually come to the hands of an executor are assets, rendering him liable to answer the value to legatees and creditors, unless he can excuse himself either by showing that the effects were lost *Page 37 
or impaired in value without any default in him, as if destroyed by enemies, flood, lightning, or the like; or if insolvent trespassers come and destroy the goods without any default or neglect in him; or if a debtor in an obligation made to the testator be insolvent, or become so before the moneys can be recovered of him — these and the like cases will form an excuse for him and exonerate him, either (20) of the whole value or of part, according as the proof lies upon him, it being better to require it of him than of the legatees or creditors (the first of whom may be infants and the latter perhaps living at a distance) to give proof of more having come to his hands of the value of any article than he admits. He might, and it is to be feared would, in many instances, charge himself with smaller sums than did come to his hands, and throw it upon them to prove the circumstances of each particular article, of which in most instances they could know anything. Office Exrs., 110, 113, 115. Then if all the effects which actually come to the hands of the executor be assets, he is at the common law prima facie chargeable with that value, and if he sell or waste or otherwise dispose of them, he is still liable, not for what he may have gotten, but for the value, and his sale of them is of no consideration to the legatees and creditors, they not being at all concerned in the contracts he may think proper to make; they are his own — they affect him only, and he can claim the performance of them. If the executor take a new security for a debt due to the testator, he extinguishes the old demand and becomes liable, and therefore shall sue in his own name. 2 Ba. Ab., 441. By a parity of reason, if he sells the testator's goods, and takes a bond or promise instead of the possession of the goods, he shall be liable, and the same consequences follow. This being the old law, the question arises, Has it been altered by the acts of Assembly? I think they have not altered the old law in this respect. The first of them was made to restrain abuses practiced by executors and administrators, who had the goods appraised frequently at an under-value, and so wronged the legatees and creditors. This is recited in the preamble of the act, and is then said to be "to the great detriment of the creditors and kindred," and the act itself alters this for the future by directing a public advertisement at the courthouse, a public sale to the highest bidder, and a return of the account of sales by the executor on oath. Those provisions have one only object, namely, that of preventing the selling of the goods or keeping them by the executor at an under-value. The other act adds, that the sale shall be made by the sheriff, on a credit of six months, and that bonds with sureties shall be taken. Is all this to favor the executor? To alter the law so as to render him less liable than before? No, surely; it was to take from him the probability of abusing his trust, by *Page 38 
diminishing the value of the estate. Before the act he might take the goods at their appraised under-value; now the appraisement is done away. He might sell privately to a friend or trustee, now he cannot; he might sell for ready money, now he cannot; before the last act and after the first, he might sell at public auction himself, or by an (21) agent of his own appointment, but now only by the sheriff, a public sworn officer, entrusted by the law to enhance the price as much as possible; and he is now to sell on six months credit. Those provisions are all of them directed against the power to commit abuses, and had not in view in any instance to alter the law in favor of the executor. But why take bond and security? For this reason: that, being directed to sell upon credit, it would have been a legal excuse for him if the vendee became insolvent before the day of payment. To take from him this excuse, he is directed to take sureties, so that if the vendee became insolvent, he might be told to resort to them, and so be without excuse for not having the value of the goods sold. The latter act did not intend to put it in his power to say to a legatee or creditor, "Though I once had the goods, I sold them and took bond and sureties, and here it is." As to an executor or administrator discharging himself by a tender of the bonds, that is designedly left out of the act, though that provision is expressly made for guardians. And why left out in these cases? Because executors and administrators must collect and pay debts, and settle the estate with those moneys, which guardians are not to do. These acts limit the discretionary power which executors and administrators had before, and which might be exerted to the prejudice of the estate in the several instances before mentioned; but they do not enlarge this provision or diminish their liability in any one instance; and consequently the executor must be liable for the goods which come to his hands since these acts in the same manner as before. He had the power to sell before, and might sell in any way he thought proper; he may still sell, but when he sells he must do it as the acts direct, so as to exclude the possibility or the suspicion that the goods have been sold for less than their value. This is the meaning of the acts. If before the acts he had sold on credit, he must have sued in his own name, and the bonds would have gone to his executors, and if the obligors or sureties were insolvent at the date of the bond, or were then likely to become so, or have since become so, his estate will be liable for the amount and must pay it, unless they can prove what in law will excuse them, which is far more equitable than to say the administrator de bonisnon shall take the bond, and that it is a part of the deceased's estate, and that the administrator must sue upon it, and in case of his being able to recover or obtain nothing, that then he shall be turned *Page 39 
round to sue the estate of the first administrator or executor, and to prove the debtor's insolvency at the date of the bond, before he can be allowed to recover. I will, however, think further of this question, as the opinion I am now of seems to be against that of WILLIAMS. J., and also against what I have heard some of the most respectable of the profession express.
Sic adjournatur.
NOTE. — See Cutlar v. Quince, post, 60; Eure v. Eure, 14 N.C. 206, which establish that a bond taken by an administrator for the sale of his intestate's goods is assets, part of the estate, and may be sued upon by the administrator de bonis non in the name of himself as administrator.
(22)